110   537
s 112   584

110   537
s112   584
s117   108
s124    10

BEECHER *v.* FERRIS.

1. ADVERSE POSSESSION—EVIDENCE.

Where, in an action of ejectment for a strip of land which plaintiff claimed by adverse possession, a surveyor testified that he was employed by plaintiff's grantor, 17 years before, to make a survey of the ground, and that the latter then claimed title up to the fence on the west side of his premises, it was proper to show, by way of characterizing his claim, that the original boundary, as located by the surveyor at the time, was east of the strip in controversy, and that he so indicated the line by a surveyor's mark, which was yet visible.

2. SAME.

Evidence that the defendant had used the strip of land in question, lying east of his fence, for a pathway during part of the time for which plaintiff claimed to have been in adverse possession, was admissible in the former's favor.

3. SAME—FACTS ESSENTIAL TO CLAIM.

A claim of adverse possession cannot rest upon the acts of the opposite party, but the acts relied upon must be those of the person, or of the representatives of the person, claiming title by virtue thereof; and such possession must have been actual, continued, visible, notorious, distinct, and hostile.

Error to Wayne; Frazer, J. Submitted June 17, 1896. Decided July 31, 1896.

Ejectment by George L. Beecher against Alfred Ferris and Osman B. Canney. From a judgment for defendants, plaintiff brings error. Affirmed.

*Henry M. Cheever*, for appellant.

*John Galloway* and *Henry M. Dubois*, for appellees.

MOORE, J. Plaintiff owned lot 5. Defendant Ferris owned lot 6. Canney was a tenant under Ferris. Suit

in ejectment to secure a piece of land, 2 feet by 16 feet, was commenced September 26, 1894, by the plaintiff, who claimed the land in question by adverse possession under color of title. The annexed plat will indicate the situation of the premises.

The case was tried by jury, who found a verdict in favor of defendants. The assignments of error relate to the admission of testimony, and the charge of the court as to what constitutes adverse possession.

The plaintiff offered a deed conveying lot 5 to his father; his counsel stating it was offered to show color of title, and that plaintiff's claim was by adverse possession. The deposition of Mr. Robinson, the surveyor, was offered in evidence, in which he testified to making surveys in January or February, 1878, and that the Ferris fence was there then, and that lot 5 was inclosed, and that Beecher claimed to own it. He further testified that he went down there with the attorney for plaintiff, to see how far Ferris had put his barn over on the line, and that it was over two feet; that he did not know

how long the barn had been there; that it was six years since he had been down there. On the cross-examination he was allowed to testify that he made a survey of the west side of lot 5.

### Cross-examination by Mr. Galloway:

" *Q.* The survey that you made, Mr. Robinson, in 1878, was that not the line between the Woodbridge and Lognon farms? (Objected to, because it is immaterial where the line as surveyed was. The plaintiff claims, not by the survey, but by adverse possession of over 15 years, and therefore it is immaterial.)

" *Mr. Galloway:* My object in asking the question was to ascertain which line he made the survey of in 1878. (Court overruled the objection, and plaintiff's counsel excepted.)

" *A.* The line between the Lognon and Woodbridge farms, and also the line of lot 5, west of it.

" *Q.* You made a survey of both sides of the lot?

" *A.* Yes.

" *Q.* In making your survey of the west line of lot 5, —that is, the west side of Beecher's lot,—did you drive in stakes, or make any marks upon the fence, in 1878?

" *A.* If there are fences, we make marks, but, if no fences, we drive stakes.

" *Q.* If there is a mark upon the fence on the north side of Abbott street, made by you in establishing the line between lots 5 and 6, would that be the mark you made at the time of the survey in 1878?

" *A.* I do not know, because we made so many surveys. If there was one mark, we wouldn't put another.

" *Q.* In that survey of 1878, did you undertake to locate the old original line between lots 5 and 6?

" *A.* I guess they were their proper width, just as recorded.

" *Q.* That was the location of it by measurement from the east line of lot 5?

" *A.* Yes.

"*Q.* He had more inclosed there, according to the survey, I think, than he was entitled to?

"*A.* There was a surplus.

"*Q.* You are aware that Beecher's lot 5 was originally 100 feet?

"*A.* 100 and 80-100. They were that all along.

"*Q.* That was on the line of Howard street?

"*A.* All along.

"*Q.* You reckoned from the east line of lot 5 as it originally was, and measured 100 and 80-100 to the line on the west side?

"*A.* That would be the proper distance; yes, sir.

"*Q.* How far can you say, with reference to Ferris' fence,—how near to that measure?

"*A.* It must have been about two feet east of it.

"*Q.* That, then, would be establishing the old original survey?

"*A.* According to the old record.

"*Q.* If the surveyor's marks which appear now upon the fence bounding the north line of Abbott street,—if that mark was made by you in 1878, that will indicate the old line, will it?

"*A.* That will indicate the line of that lot according to the old survey.

"*Q.* And when you were down there, five or six years ago, you saw this barn, didn't you?

"*A.* Yes.

"*Q.* And did you recognize that that barn did not extend over the old line as you established it?

"*A.* I should think it was about the right spot.

"*Q.* In making your survey of that lot you found there was a surplus?

"*A.* I did.

"*Q.* And it had been taken by those on the Woodbridge farm?

"*A.* No, they hadn't taken it. They had merely moved their fences over in different places.

"*Q.* So that the change that was made on lot 5 would be the surplus that belonged to the Lognon farm?

"*A.* They moved their fences over as far as they could on the Woodbridge line.

"*Q.* Do you remember now the width of that strip?

"*A.* Five or six feet some places; two feet other places."

This is assigned as error, but we cannot so regard it. In view of his examination in chief, we think it proper cross-examination. On the redirect examination he testified there was a surplus in the Lognon and Woodbridge farms, and that, in giving Mr. Beecher his right width, he found the barn 25 inches over the line.

The plaintiff was sworn as a witness, and gave testimony tending to show that lot 5 was inclosed as long ago as 1876, and that his father claimed to own all that was inclosed, and used it; that the barn had been moved over within four or five years; that his father built the fences alongside the street between the two side fences, and claimed all the land inclosed by the four fences; that, before the barn was moved over, the Ferris fence was built from the street to the alley, and connected with the alley fence. It was admitted that Ferris built the fence about 20 years before the trial of this cause, which was held in December, 1895. Defendant Ferris gave testimony tending to show that he had owned the property 20 years before commencement of suit; that his lot was commons when he purchased it; that the commons extended to Baker street; that the house had been built over 15 years; that, after erecting the house, he had a fence built to inclose the property; that at that time there were no stakes or posts to indicate the lines of his property; that his barn was built 5 or 6 years ago; that he built it 2 feet beyond the fence, because his surveyor told him that was his east line. He testified that he never had any arrangement with the Beechers as to the east line of his property; that at the time he built his fence there were no fences on the street or alley; that at that time Beecher's property was a commons, and that lot 5 has never been ploughed. He did not know when the fences on Abbott street were put up, but it was several years after he built his fences. He further testified that he used the land east of his fence as a pathway to get to the rear of his lot from the street; that he never knew from Mr. Beecher, or any one representing him, that it was claimed he was encroaching on him after he built the barn, until the commencement of the suit. On the cross-examination he testified that he built the fence from the street to the alley, and when he built the barn he tore away 16 feet of it; that when he built the fence he did not know where the line was, and that he walked

on the land east of his fence as a convenience, and not because he knew where the line was. There was testimony offered tending to show that the alley on the north side of lot 5 was opened in 1878 or 1880.

The defendants were allowed to show where Mr. Robinson, the surveyor, put his mark on the fence, on the north line of Abbott street, in 1878, about two feet east of the west line of lot 5, and this is assigned as error. We do not think this was error. What was done at that time by Mr. Robinson was done by him for Mr. Beecher, and would serve to characterize the claim at that time of Mr. Beecher. It was not a very important act, perhaps, but it was one of the acts of one of the parties, and it bore upon the question of the manner of holding. What is said of the admission of this testimony will also apply to the admission of the testimony of the use, by the defendant Ferris, of some of the land east of the fence as a pathway. A great deal more testimony was offered on the part of defendants, but the portions already stated will indicate the issues involved.

The charge of the court was as follows:

"This is an action of ejectment, brought by the plaintiff, Mr. Beecher, against the defendant Mr. Ferris to recover a strip of land 2 feet wide by 16 feet long, which is covered by a portion of the barn of said defendant. In order to maintain this action, it is necessary, under the declaration in this case and the pleadings in this issue, for the plaintiff to establish his right to this piece of land by what is known as 'adverse possession.' This adverse possession must be such possession as the law will recognize to be adverse. It must continue for the period of 15 years. This 15 years must run from the time the adverse possession first began to the time that the barn in this case was built. This possession must be an actual possession; it must be continued; it must be continuous and unbroken for the period of 15 years; it must be visible, such as persons can see and recognize as being the possession of the plaintiff in this case, Mr. Beecher; it must be notorious, distinct, and hostile. So, before the plaintiff recovers in this case, all the elements which constitute adverse possession must

be proven satisfactorily to you. It is conceded that the defendant is in the actual possession of this property, so that the question as to where the lines are cuts no figure in this controversy at all, because he is entitled, under the declaration, to a verdict at your hands, unless the plaintiff shall have established what I have defined to you to be adverse possession satisfactorily. You have heard the evidence in relation to the time at which this fence was erected. The building of this fence is one act upon the part of the defendant. But the acts of the defendant are not what constitute adverse possession; it is the acts of the plaintiff; so that the acts of Mr. Beecher must be such as to come within the definition of adverse possession in order to be able to maintain this suit. So he must have done some acts for 15 years previous to the building of this barn, kept these acts up continuously during this 15 years, so as to satisfy you that the possession has been actual, continued, visible, notorious, distinct, and hostile. If any one of the elements fails in this, which is called 'adverse possession,' then the plaintiff cannot recover; but if he has maintained such possession by acts on his part that will amount to what I have stated to you to be adverse possession, then the plaintiff can recover, and not otherwise. I have endeavored to make this as clear as I can in a few words. Plaintiff seeks to recover by adverse possession. I have defined to you what adverse possession is. All these elements that enter into the subject of adverse possession must be done by the acts, conduct, and behavior of Mr. Beecher or his representatives (that is, by Luther Beecher or his son), and not by the acts of the other man (that is, Mr. Ferris). So that, if you find that for 15 years this possession has been of that character, the plaintiff will recover; if you do not so find, then you will find a verdict for the defendant."

It is the claim of plaintiff's counsel that the trial judge practically told the jury that, because Mr. Beecher did not build the Ferris fence, he could not claim by adverse possession, and he insists that the charge was prejudicial to Mr. Beecher's legal rights, and calls our attention to a great many authorities, all of which we have examined with care. We cannot agree with counsel in the conclusion he reaches. It was a disputed question as to whether

the north 16 feet of the fence had been erected 15 years before it was torn away, and the barn put where it now is. The character of Mr. Beecher's occupation of the premises was also a disputed question, as was the time when the alley was opened. In view of this testimony, we can see nothing wrong in the charge. We think the charge of the court was a correct statement of the law of adverse possession. *Yelverton* v. *Steele*, 40 Mich. 538; *Sparrow* v. *Hovey*, 44 Mich. 63.

The judgment is affirmed.

The other Justices concurred.